UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MANUEL DOMINGO GOMEZ ARIZENDI,

Petitioner,

v.

TONYA ANDREWS, *et al.*,

Respondents.

Case No. 1:26-cv-04993 (VC)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 1, 3

This habeas action concerns the detention of Petitioner Manuel Domingo Gomez Arizendi, a noncitizen who has lived in the United States for nearly twenty-nine years. Dkt. No. 1 ¶ 23. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. *See* Dkt. Nos. 1, 4. For the reasons that follow, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion for temporary restraining order as moot.

## I. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States in 1997. Dkt. No. 1 ¶ 23. Following his entry, he settled in Texas, married, and had two children, one of whom is in the U.S. Marin Corps. *Id.*; Dkt. No. 9-1 at 1; Dkt. No. 9-6 at 1; Dkt. No. 11-1 ¶ 2. He has also worked consistently as a handyman. Dkt. No. 1 ¶ 23.

Petitioner did not have any interactions with immigration authorities between his initial entry into the United States and October 24, 2024. He first encountered immigration authorities in the

Dallas (Texas) County Jail in October 2024, after he had been arrested on warrants for driving while intoxicated and discharging a firearm. Dkt. No. 9-1 at 2 – 3. On November 18, 2024, DHS determined that he should be released on his own recognizance "pending a final administrative determination in your case," Dkt. 9-5 at 1, and was served him with a Notice to Appear placing him in removal proceedings and ordering that he appear for a hearing two years later on November 4, 2026. Dkt. No. 9-4 at 1; Dkt. No. 9-2 at 1. The release order included several conditions, including not committing any crimes while on release, and cautioned him that any violation of the conditions "will result in revocation of your employment authorization document" and "may result in you being taken into ICE custody." Dkt. No. 9-4 at 3. The release order also directed Petitioner to report to a duty officer in Dallas, Texas, on May 14, 2025. Dkt. No. 9-4 at 1, 5. Petitioner contends that he has complied with all conditions of his release—a contention which Respondents do not dispute. Dkt. No. 1 ¶ 23.

Petitioner was re-detained by Immigrations and Customers Enforcement ("ICE") on May 14, 2026 during a scheduled ICE check-in. Dkt. No. 9-6 at 2; Dkt. No. 9-7. On July 8, 2026, an Immigration Judge denied bond, finding that it lacked authority to grant release. Dkt. No. 11-1 ¶ 3.

On June 29, 2026, Petitioner, proceeding pro se, filed the instant petition for writ of habeas corpus, arguing that his re-detention violates the due process clause of the Fifth Amendment. *See* Dkt. No. 1 ¶¶ 46–49. He requests that the Court grant his immediate release. *Id*. at 17. In Respondents' three-page opposition, the Government candidly acknowledges that "this case is not substantially distinguishable from the cases wherein this Court granted immediate release when the government detained a noncitizen for his pending removal proceedings." Dkt. No. 9 at 2. Nonetheless, they maintain that Petitioner's detention is authorized under 8 U.S.C. § 1225(b)(2), which provides for mandatory detention. *Id*.

## II. DISCUSSION

Before turning to Petitioner's due process claim, the Court addresses whether Petitioner may be mandatorily detained under 8 U.S.C. § 1225(b)(2) as Respondents contend. *See* Dkt. No.

9 at 2. This Court—as well as the majority throughout the Ninth Circuit—have already concluded that Section 1225(b)(2) does not apply to non-citizens like Petitioner who were previously released by the government on their own recognizance. *See, e.g.*, *Ojeda v. Warden, California City*, No. 1:26-CV-03561 (AMO), 2026 WL 1475816 (E.D. Cal. May 26, 2026) (collecting cases); *Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, * 8–12 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). "Such expansive interpretation of § 1225(b)(2) is unlawful as applied to non-citizens," like Petitioner, "who have been released by DHS on their own recognizance into the interior of the country." *Cornejo v. Andrews*, 823 F. Supp. 3d 1085, 1094 (E.D. Cal. 2026).[1]

As the Government makes no further argument regarding the basis for Petitioner's detention, the Court next turns to Petitioner's due process claim. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner obtained a protected liberty interest in his continued freedom following his release from immigration custody on his own recognizance. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in

[1] The fact that Petitioner had a bond hearing before an Immigration Judge does not change the analysis here. At the bond hearing, the Immigration Judge refused to consider the substance of Petitioner's request for bond and instead ruled that it lacked the authority to grant relief (*see* Dkt. No. 11-1 ¶ 3), presumably based on Respondents' argument here that Petitioner must be mandatorily detained per §1225(b)(2). As courts across the country have already held, the Immigration Judge's finding that it lacked authority to grant bond was unlawful. *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at 4–7 (E.D. Cal. Oct. 27, 2025).

their liberty.”). The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen “demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons” and that the noncitizen is “likely to appear for any future proceeding.” 8 C.F.R. § 1236.1(c)(8); *see also*, *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) (“Under federal regulation, DHS was authorized to release them under § 1226 only upon a determination that ‘such release would not pose a danger to property or persons’ and that they were ‘likely to appear for any future proceeding.’”). “Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.” *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff’d sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). “Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances.” *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him over two years ago. Since then, Petitioner has continued to maintain ties in the community living with and supporting his family. He further contends that he has complied with all the conditions of his release. Respondents do not rebut any of these facts. As such, the Government’s election to release Petitioner provided him with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Olivero*, 2026 WL 1162724, at *4; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (“Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond.”); *He v. Lyons*, No. 25-CV-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) (“Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.”); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that “the liberty interest that arises upon release [from immigration detention]

is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for almost two years. In the intervening years he has continued to develop ties in his community. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id*. at 1094. If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner Manuel Domingo Gomez Arizendi from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: July 14, 2026

VINCE CHHABRIA
United States District Judge